Argued and submitted May 3, 1988, the decision of the Court of Appeals and order of the Employment Division referee reversed and remanded to Employment Division for further proceedings May 7, 1989

In the Matter of the Tax Deficiency Assessment of Rogue Valley Youth for Christ.

## EMPLOYMENT DIVISION,
*Petitioner on Review,*

*v.*

## ROGUE VALLEY YOUTH FOR CHRIST,
*Respondent on Review.*

(ED 85-T-191; CA A41242; SC S34864)

770 P2d 588

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for Petitioner on Review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Daniel C. Thorndike, of Blackhurst, Hornecker, Hassen & Thorndike, Medford, argued the cause and filed a response to the petition for Respondent on Review.

Kelly Clark, of Bouneff, Chally & Marshall, Portland, filed an *amici curiae* brief on behalf of Ecumenical Ministries of Oregon, Greater Portland Association of Evangelicals, and Christian Legal Society.

Mildred J. Carmack, of Schwabe, Williamson & Wyatt, Portland, filed an *amici curiae* brief on behalf of Nineteen Oregon Churches and The Christian Law Association. With her on the brief was Robin S. Hom, of Gibbs & Craze, Burlingame, California.

Eugene E. Feltz and Joseph D. McDonald, of Palmer, Feltz, Sherry & Smith, Portland, filed an *amici curiae* brief on behalf of the Archdiocese of Portland in Oregon and the Diocese of Baker.

Hardy Myers, of Stoel, Rives, Boley, Jones & Grey, Portland, filed an *amici curiae* brief on behalf of the Archdiocese of Portland in Oregon and the Diocese of Baker. With him on the brief was Casey, Palmer & Feltz, Portland.

GILLETTE, J.

## GILLETTE, J.

In this unemployment compensation taxation case, the Employment Division (Division) seeks to assess unemployment compensation taxes against all religious organizations, including churches, in spite of certain Oregon statutory language to the contrary. The Division claims that the statutory distinction between religious organizations that are churches and similar organizations that are not churches violates the Oregon Constitution.[1] The Court of Appeals did not reach this constitutional issue, finding for the potential taxpayer, Rogue Valley Youth for Christ (Rogue Valley), by ruling that there was no actual controversy and that the Division was seeking a "purely advisory opinion." *Employment Div. v. Rogue Valley Youth for Christ*, 87 Or App 573, 576, 743 P2d 745 (1987). We conclude that the constitutional issue is properly before us, and reverse the decision of the Court of Appeals.

## I. BACKGROUND

This case involves the interworkings of state and federal unemployment tax schemes. The Federal Unemployment Tax Act (FUTA), 26 USCA sections 3301-3311 (1988), contains a set of statutory guidelines which a state's unemployment tax program must meet to qualify for federal tax credits.[2] Although compliance is optional, states normally comply in order to avoid subjecting local employers to a double tax. The Oregon legislature has complied.[3]

FUTA covers most forms of employment, but there are exceptions in the federal law, including one for service performed

---

[1] Article I, sections 2 and 3, of the Oregon Constitution provide, respectively:

"All men shall be secure in the Natural right, to worship Almighty God according to the dictates of their own consciences."

"No law shall in any case whatever control the free exercise, and enjoyment of religeous [sic] opinions, or interfere with the rights of conscience."

[2] For a more detailed discussion of FUTA and its relation to Oregon law, see *Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 476-78, 695 P2d 25 (1985).

[3] ORS 657.030(2) provides that, with certain exceptions not here relevant,

"[n]otwithstanding any other provisions of this chapter, 'employment' shall include service * * * [w]hich is required to be covered under this chapter as a condition for employers to receive a full tax credit against the tax imposed by the Federal Unemployment Tax Act."

"(1) in the employ of (A) a church or convention or association of churches, or (B) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches."

26 USCA § 3309(b)(1).[4] There is no similar provision for an organization operated primarily for religious purposes but not affiliated with a church or group of churches. Thus, according to the federal statute, states must subject religious organizations which are not church-affiliated to unemployment tax or risk losing the federal tax credit.

## II. FACTS

On June 11, 1985, the Division informed Rogue Valley that it was an "employer" subject to ORS chapter 657 and would, therefore, be required to pay unemployment payroll taxes. Rogue Valley requested a hearing, contending that it was not an "employer" because, under ORS 657.072, it qualified either as a church or as an organization operated exclusively for religious purposes and principally supported by a church or association of churches. It also contended that the application of Employment Division Law to it would result in excessive governmental entanglement with religion and violate its right to free exercise of religion under both the state and federal constitutions. A hearing was held. The referee found that Rogue Valley was a church and therefore was exempt from unemployment compensation tax. The Division sought judicial review.

In the Court of Appeals, the Division did not challenge Rogue Valley's status as a church. Instead, it contended that, based upon the principles expressed by this Court in *Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 695 P2d 25 (1985), it could not constitutionally distinguish

---

[4] ORS 657.072 contains Oregon's parallel provision:

"(1) 'Employment' does not include service performed:

"(a) In the employ of:

"(A) A church or convention or association of churches;

"(B) An organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches."

between churches and other religious organizations but must tax them all. In *Salem College,* we held that

> "[t]he legislature could not constitutionally exclude from unemployment compensation coverage religious schools and their employees if they are controlled or principally supported by organizations described as 'churches' and extend coverage to otherwise similar religious schools operated by religious organizations that are not 'churches.' The distinction contravenes the equality among pluralistic faiths and kinds of religious organizations embodied in the Oregon Constitution's guarantees of religious freedom."

298 Or at 495. The Division contends that these same constitutional concerns prevent it from distinguishing among religious organizations based upon their status. Therefore, the Division contends that it must assess employment taxes against all religious organizations—including churches—in order to keep Oregon in compliance with both FUTA guidelines and the Oregon Constitution. We agree.

### III. THE COURT OF APPEALS DECISION

■ The Court of Appeals declined to reach the constitutional issue, stating that

> "[the Division] asserts that the legislature may not constitutionally deny an exemption to a religious organization that is not a 'church' and at the same time grant an exemption to a religious organization that is a 'church.' That issue, however, is not factually presented by this case, because no party here has been denied an exemption on the basis that it is a religious organization that is not a 'church.' Without such an actual controversy, Division cannot raise the issue and thereby seek a purely advisory opinion concerning the constitutionality of the statute."

*Employment Div. v. Rogue Valley Youth for Christ, supra,* 87 Or App at 576. We disagree.

The Division must administer the law in accordance with constitutional principles, and must enforce its statutory obligations. If a statute tells an agency to do something that a constitution forbids, the agency should not do it. *See Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 362-65, 723 P2d 298 (1986). Here the agency believes that it cannot constitutionally grant Rogue Valley an exemption while denying one to other non-church religious organizations. It has on that

basis attempted to force Rogue Valley to pay taxes which Rogue Valley denies owing. This is an "actual controversy."[5]

## IV. THE CONSTITUTIONALITY OF ORS 657.072(1)(a)

■ ■  If Oregon wishes to retain its unemployment tax credit, it must charge unemployment taxes to all religious organizations which do not fit the 26 USCA section 3309(b)(1) exclusions. However, nothing in FUTA prohibits Oregon from taxing even excluded organizations. As far as FUTA is concerned, Oregon may require the Catholic church to pay unemployment taxes for the work performed by nuns and monks. The State of Oregon can draw its tax line anywhere it desires, so long as it does not exclude religious organizations FUTA requires be included. *See Salem College & Academy, Inc. v. Emp. Div., supra,* 298 Or at 476-77.

Moreover, the legislature intended to draw the line at the same point as does FUTA. The Oregon exemption statute, ORS 657.072(1)(a), is, word for word, the same as 26 USCA section 3309(b)(1). The overriding intent of the legislature notwithstanding, however, the question is whether the Oregon Constitution permits excluding the organizations specified in ORS 657.072(1)(a) from the payment of unemployment taxes while other very similar religious organizations which do not fit the statutory definitions are taxed. It does not.

The core problem involves the definition of the word "church." Defining "church" too narrowly—including, for example, only hierarchical churches such as the Roman Catholic Church,—might comply with FUTA, but it would violate the Oregon Constitution because the protections of the Oregon Constitution extend to worship even outside organized churches. *Salem College & Academy, Inc. v. Emp. Div., supra,* 298 Or at 495. On the other hand, if "church" is defined too broadly, organizations would be exempted from the unemployment tax when FUTA requires that they be included.

It may be possible to expound a judicial test for "church" consistent with both the intent of the Oregon legislature and with FUTA. Any such definition, however, would

---

[5] Because the main issue was first raised on appeal and was never heard by the administrative referee, we could remand this case for further administrative hearings on the subject. We do not do so, however, because the issue is solely a legal one, *viz.,* the constitutionality of a portion of the unemployment tax laws.

still face the problem discussed in *Salem College*—that is, Oregon would still be put in the position of treating unequally what, at least for Oregon constitutional purposes, are religious organizations. Creating such a "distinction contravenes the equality among pluralistic faiths and kinds of religious organizations embodied in the Oregon Constitution's guarantees of religious freedom." *Salem College & Academy, Inc. v. Emp. Div., supra,* 298 Or at 495. Therefore, we hold that Oregon must treat all religious organizations similarly whether or not they would qualify as churches under FUTA or OAR 471-31-090(1)(a).

Our conclusion requires us to address a second question: If the legislature's distinction between churches and other religious organizations will not withstand scrutiny, which of the following would it have chosen—complete exemption of all churches and religious organizations, in order to save the clearly expressed exemption for churches; or exemption for neither, in order to save Oregon's eligibility for tax credits under FUTA? The inquiry is made even more challenging by the fact that taxing all religious organizations creates potential constitutional problems involving the free exercise of religion.

Although the answer is by no means obvious, we believe that the legislature would have chosen to include all religious organizations in the unemployment compensation program. ORS 657.030(2) expresses a clear intention that the requirements of FUTA be met. We find no similar clear expression of preference for an exclusion for churches, no matter what the consequences. We turn to the free exercise issue raised by our identification of FUTA adherence as the touchstone of the legislative policy.

## V.  THE FREE EXERCISE ISSUE

Rogue Valley and its *amici* contend that application of unemployment compensation taxes to all religious organizations could create a serious "chilling effect" on an organizations's free exercise of religion. We do not believe this fear is well-founded.

To determine whether a governmental action impinges upon the free exercise of religion it is first necessary

to test the governmental action against the Oregon constitutional provisions protecting religious expression. In a line of cases beginning with *City of Portland v. Thornton,* 174 Or 508, 512, 149 P2d 972 (1944), this court has treated the First Amendment Free Exercise clause as "identical in meaning" with the Oregon constitutional provisions covering the same subject. A more recent case has held, however, that "identity of 'meaning' * * * does not imply * * * that verbal formulas developed by the United States Supreme Court in applying the federal text also govern application of the state's comparable clauses." *Cooper v. Eugene School Dist. No. 4J, supra,* 301 Or at 369. *Cooper* went on to uphold a statute prohibiting public school teachers from wearing overtly religious clothing while performing their duties, finding a strong state constitutional policy of neutrality toward all religions. Our ruling today comports with this policy. Under our ruling all Oregon religious organizations will be treated similarly by subjecting them to the unemployment payroll tax.

Of course equal treatment is not the only interest that is protected by the right of free exercise of religion. The State is also prohibited from interfering with any individual's or group's right to worship or exercise of "religious opinion" or "rights of conscience" under Article I, section 2 and 3. It is in this context that Rogue Valley and its *amici* contend that requiring them to submit to the unemployment payroll tax and all its attendant regulation would excessively burden— "chill," to use their term—the free exercise of religion. This is a concern that we think is met in this case by the formula used in connection with the First Amendment.

When governmental action is challenged as a violation of the Free Exercise Clause of the First Amendment it must first be shown that the governmental action imposes a burden on the party's religion. *United States v. Lee,* 455 US 252, 256-57, 102 S Ct 1051, 71 L Ed 2d 127, 132 (1982). Assuming that imposing unemployment payroll taxes on all religious organizations will burden at least some of those groups, (although not necessarily their freedom of belief or worship), that assumption "is only the beginning, however, and not the end of the inquiry. Not all burdens on religious liberty are unconstitutional. * * * The state may justify a limitation on religion by showing that it is essential to accomplish an overriding governmental interest." 455 US at 257, 71 L Ed 2d at

132. In the present case the State of Oregon has two governmental interests[6] which, when taken together, are sufficiently important to support the burden on religion represented by unemployment payroll taxes.

There are few governmental tasks as important as providing for the economic security of its citizens. A strong unemployment compensation system plays a significant role in providing this security. Given the existence of FUTA, any state's unemployment tax must, as a practical matter, comply with FUTA's requirements or the state's employers would face a double tax. Such a double tax would, in turn, create a very undesirable business climate in the state. This, combined with Oregon's constitutional interest in treating all religious organizations equally, creates an overriding state interest in applying the unemployment payroll taxes to all religious organizations. Our construction of the coverage of Oregon's unemployment compensation taxation scheme does not offend the First Amendment's Free Exercise Clause or Article I, section 3, of the Oregon Constitution.

## VI.   CONCLUSION

The decision of the Court of Appeals is reversed. The final order of the Employment Division referee is reversed and the case is remanded to the Employment Division for further proceedings consistent with this opinion.

---

[6] These interests are factual, in the sense that they either are themselves facts or are asserted based on identifiable factual premises—in this case, the premises underlying Oregon's statutory scheme and its constitutional protections. They are not, however, facts subject to proof by traditional trial methods. Instead, they are facts known or assumed by a law-announcing body. Judge (formerly Professor) Robert E. Keeton calls these "premise facts." Keeton, Legislative Facts and Similar Things: Deciding Disputed Premise Facts, 73 Minn. L. Rev. 1 (1988).