Argued and submitted July 10, rules held valid November 12, 1992

Harriet P. MERRICK,
*Petitioner,*

*v.*

BOARD OF HIGHER EDUCATION
and State of Oregon,
*Respondents.*

(CA A60997)

841 P2d 646

Charles F. Hinkle, Portland, argued the cause for petitioner. With him on the briefs were Katherine A. McDowell, Edward J. Reeves and ACLU Foundation of Oregon, Inc., Portland.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Robert B. Rocklin, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioner filed this proceeding under ORS 183.400[1] to determine the validity of OAR 580-22-050, OAR 580-15-010 and OAR 580-15-065 (rules),[2] promulgated by respondent Board of Higher Education (Board).

---

[1] ORS 183.400 provides, in pertinent part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court.

"(2) The validity of any applicable rule may also be determined by a court, upon review of an order in any manner provided by law or pursuant to ORS 183.480 or upon enforcement of such rule or order in the manner provided by law.

"(3) Judicial review of a rule shall be limited to an examination of:

"(a) The rule under review;

"(b) The statutory provisions authorizing the rule; and

"(c) Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures.

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

"(b) Exceeds the statutory authority of the agency; or

"(c) Was adopted without compliance with applicable rulemaking procedures."

[2] OAR 580-22-050 provides:

"No institution or division shall discriminate in employment based on race, color, religion, national origin, handicap, age, marital status, sex or sexual orientation."

OAR 580-15-010 provides:

"As used in OAR 580-15-010 to 580-15-160, 'discrimination' means any act that either in form or operation, and whether intended or unintended, unreasonably differentiates among persons on the basis of age, handicap, national origin, race, marital status, religion, sex or sexual orientation."

OAR 580-15-065 provides:

"(1) Institutions and divisions shall assure that nondiscriminatory policies are followed in student employment. Discrimination grievances arising out of student employment shall be addressed using the procedures required by or described in OAR 580-15-015 and 580-15-090 through 580-15-155.

"(2) Institutions and divisions shall not assist prospective employers or agencies known by them to discriminate on a prohibited basis in their recruitment, hiring, or employment practices. Placement officers and other Department personnel who assist in the recruiting and hiring of students shall take steps to inform prospective employers of the requirements of nondiscrimination under the law."

Petitioner, a lesbian, is employed by the Board and has supervisory authority over student and other state employees. The Board has general statutory authority to adopt rules for the governance of state higher education facilities and employees. ORS 351.070(2)(b).[3] On October 15, 1987, Governor Goldschmidt issued Executive Order 87-20, which prohibited discrimination on the basis of sexual orientation in the Executive Branch of state government. The Board then adopted rules providing that no institution or division under the Board's governance may discriminate in employment on the basis of sexual orientation.

In the general election held on November 8, 1988, the people adopted Ballot Measure 8, which had the effect of repealing the executive order. ORS 236.380, which codified that measure, became effective December 28, 1988, and provides:

"(1) For purposes of this section, 'sexual orientation' means heterosexuality, homosexuality or bisexuality.

"(2) No state official shall forbid the taking of any personnel action against any state employee based on the sexual orientation of such employee.

"(3) This section shall not be deemed to limit the authority of any state official to forbid generally the taking of personnel action against state employees based on nonjob related factors."

After petitioner filed her petition, respondent moved to dismiss on the ground that we did not have jurisdiction because there was no justiciable controversy. We denied that motion. 103 Or App 328, 797 P2d 388 (1990). The rules were subsequently amended to comport with the statute.[4] Petitioner filed a second amended petition and then filed her

---

[3] ORS 351.070(2)(b) provides:

"(2) Subject to such delegation as the state board may decide to make to the institutions, divisions and departments under its control, the State Board of Higher Education, for each institution, division and department under its control, shall:

"* * * * *

"(b) Adopt rules and bylaws for the government thereof, including the faculty, teachers, students and employees therein."

[4] The amended version of OAR 580-15-010 provided:

"As used in rules 580-15-010 to 580-15-160, 'discrimination' means any act that either in form or operation, and whether intended or unintended,

opening brief on January 23, 1991. Before respondent filed its brief, the rules were amended again so that they are now identical to the rules in effect before Measure 8 was adopted.

In our opinion denying the Board's motion to dismiss, we said:

"In determining the validity of the rules, we may examine 'the statutory provisions authorizing' them. ORS 183.400 (3)(b). When we examine ORS 351.070(2)(b), we must also examine Measure 8 and consider whether the provisions of the measure affect the authority of the Board to continue to apply the rules. Measure 8 may contradict the rules and repeal by implication the statutory authority in ORS 351.070(2)(b), on which the rules are based, insofar as they prohibit discrimination on the basis of sexual orientation.

"* * * Measure 8 * * * appears on its face to limit and negate ORS 351.070(2)(b) and the rules * * *." 103 Or App at 333.

Petitioner argues that the validity of the rules turns on the constitutionality of the statute: If the statute is unconstitutional, it cannot limit the Board's authority and, therefore, cannot render the rules invalid. The state, on the other

---

unreasonably differentiates among persons on the basis of age, handicap, national origin, race, marital status, religion, sex or sexual orientation. *Nothing in this section shall create rights or require actions inconsistent with state statutes, including, but not limited to, ORS 236.380.*" (Amended portion emphasized.)

OAR 580-15-065 provided:

"(1) Institutions and divisions shall assure that nondiscriminatory policies are followed in student employment. Discrimination grievances arising out of student employment shall be addressed using the procedures required by or described in OAR 580-15-015 and 580-15-090 through 155.

"(2) Institutions and divisions shall not assist prospective employers or agencies known by them to discriminate on a prohibited basis in their recruitment, hiring, or employment practices. Placement officers and other Department personnel who assist in the recruiting and hiring of students shall take steps to inform prospective employers of the requirements of nondiscrimination under the law.

"*(3) Nothing in this section shall create rights or require actions inconsistent with state statutes, including, but not limited to, ORS 236.380.*" (Emphasis supplied.)

OAR 580-22-050, amended portion emphasized, provided:

"No institution or division shall discriminate in employment based on race, color, religion, national origin, handicap, age, marital status, sex or sexual orientation. *Nothing in this section shall create rights or require actions inconsistent with state statutes, including, but not limited to, ORS 236.380.*"

hand, argues that we need not, and should not, reach the constitutionality of the statute, because the rules and the statute are not contradictory. Therefore, it argues, the rules may be declared valid without reaching the validity of the statute. It adds, however, that it would be necessary to reach the statute's constitutionality if the rules on review and the statute are in conflict.[5] In order to determine whether there is a conflict, we must interpret the statute.

■      We should interpret a statute to be constitutional, if possible, unless the intepretation is inconsistent with legislative intent or the express wording of the statute. *State v. Wagner*, 309 Or 5, 786 P2d 93, *cert den* ___ US ___, ___ S Ct ___, 112 L Ed 2d 171 (1990). The state contends that reading subsections (2) and (3) of the statute together permits this interpretation, which does not conflict with the rules:

> "State officials may forbid state managers from taking personnel actions based on 'nonjob related factors.' To the extent that sexual orientation is a nonjob related factor, Measure 8 allows state officials to forbid the taking of personnel actions on that basis alone."

That is not what the statute says. Subsection (2) is specific. It *prohibits* a state official *from forbidding* the taking of any personnel action against a state employee based on the sexual orientation of the employee. That necessarily means that a state official is free to take a personnel action against an employee on the basis of the employee's sexual orientation. To say that subsection (3), forbidding *generally* the taking of personnel action based on nonjob-related factors, means that sexual orientation of an employee may not be a basis for

---

[5] The state does not contend that we may not determine, in a rule challenge under ORS 183.400, the constitutionality of a statute that is applicable to the agency's rulemaking authority. We said that we had that authority in our earlier opinion. 103 Or App at 333. In *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984), the Supreme Court said:

> "In the proper sequence of analyzing the legality of action taken by officials under delegated authority, the first question is whether the action fell within the reach of their authority, the question which in the case of courts is described as 'jurisdiction.' If that is not in issue, as it is not in this case, the question is whether the action was taken by procedures prescribed by statute or regulation. Assuming that proper procedures were followed, the next question is whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute."

personnel action when that basis is not job-related, makes the statute self-contradictory. When a general and particular provision of a statute are inconsistent, the specific provision controls. ORS 174.020.

■  Because subsection (2) of the statute permits state officials to take personnel action against employees on the basis of their sexual orientation and the rules expressly prohibit discrimination on that basis, the statute and rules are in conflict. Given that conflict, the rules are not authorized, unless the statute prohibiting them is invalid.

Petitioner argues that the statute violates the free speech and equal privileges and immunities provisions of the Oregon Constitution and the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Therefore, she contends, the rules are not prohibited and are valid. We need not address the federal constitutional issues unless the statute survives state constitutional scrutiny. *See State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983).

■ ■  Article I, section 8, of the Oregon Constitution provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

The sweeping protection of that clause extends to all forms of speech, regardless of the social acceptability or offensiveness of the content, *State v. Robertson*, 293 Or 402, 416, 649 P2d 569 (1982), and regardless of the context of the communication. As was said in *State v. Moyle*, 299 Or 691, 702, 705 P2d 740 (1985), section 8 applies "with equal force" to protect expression in "political [and] industrial contexts" and "in personal and institutional relationships." Free and open expression about sexual orientation is clearly protected by section 8. Expression "may not be punished in the interest of a uniform vision on how human sexuality should be regarded or portrayed." *State v. Henry*, 302 Or 510, 525, 732 P2d 9 (1987).

■  A statute that establishes a content-based restriction on the free expression rights of public employees cannot be

sustained under section 8. ORS 236.380(2) is such a statute, because it restricts expression about sexual orientation by exposing state employees to the risk that they may be fired or subjected to other adverse "personnel action" if they engage in such expression. There is nothing in *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992), that changes that result.

■     The fact that the statute does not *explicitly* prohibit speech about sexual orientation does not save it from scrutiny under section 8. A statute that restrains the right of free expression by indirect means violates section 8 just as much as a statute that does so by direct means. The ordinance involved in *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988), for example, did not provide that "no retail store shall sell pornographic magazines." Instead, it "regulate[d] the location and spacing" of such stores. *See* Portland City Code § 33.80.030, *quoted in* 306 Or at 177-78 n 1. The ordinance, nevertheless, "in terms restrict[ed] the marketing of * * * communicative material," 306 Or at 188, and, because the practical effect of the ordinance was to restrain the right of free expression, the court held that it was unconstitutional under section 8.

It is equally clear that the practical effect of ORS 236.380(2) is to restrain the right of free expression. Adverse employment decisions will not occur unless the employee's sexual orientation comes to the employer's attention. A state employee's sexual orientation will seldom become known to the employee's supervisor unless the employee has chosen to "speak, write or print" about it. If, on the other hand, employees never in any way, by word, mannerism or conduct, communicate the nature of their sexual orientation to other people, it is highly unlikely that they would encounter discrimination on that basis.

In short, in the absence of speech or communicative expression of some kind, the nature of a person's sexual orientation rarely will become known. Because speech and status in the context of ORS 236.380(2) are thus inextricably intertwined, the validity of that statute must be measured against the prohibition of section 8. *See State v. Robertson, supra*, 293 Or at 416.

Not only does the statute discourage state employees from telling others their sexual orientation, it also discourages them from becoming involved in groups advocating gay and lesbian rights, a constitutionally protected activity, because such involvement might expose them to adverse personnel action. The statute's practical effect is to chill speech and other expression and to severely limit open communication by state employees. Accordingly, the statute violates Article I, section 8;[6] therefore, it could not have limited the Board's authority to promulgate the rules that are now in effect.

Rules held valid.

---

[6] The Board concedes that, if the statute means what petitioner says it means, it is unconstitutional. Because we hold the statute unconstitutional under Article I, section 8, we need not address the privileges and immunities challenge.