Argued and submitted September 21, 1992, reversed and remanded for
reconsideration May 19, reconsideration denied September 29, petition for review
pending 1993

James V. MELTEBEKE,
*Petitioner,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

(29-90; CA A68770)

852 P2d 859

Kelly E. Ford, Beaverton, argued the cause for petitioner. With him on the brief was Steven W. Graber, P.A., Hutchinson, Kansas.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

Edmonds, J., specially concurring.

Riggs, J., dissenting.

## WARREN, P. J.

Petitioner seeks review of a final order of the Bureau of Labor and Industries (BOLI) that concluded that he had committed an unlawful employment practice by discriminating against one of his employees on the basis of religion. ORS 659.030(1)(b). We reverse.

Petitioner is a sole proprietor of a painting business. As an evangelical Christian, he believes that he has a duty to tell others, especially nonbelievers, about God and sinful conduct. That includes informing others that, on the basis of elements of their lifestyles, they are sinners. Petitioner's "witnessing" is persistent because, as he believes, no one would ever be persuaded if he quit witnessing whenever a person lacked interest.

Between June 27 and July 27, 1988, petitioner employed complainant. During that month, petitioner, among other things, invited complainant to church at least twice each week, told complainant that he was a sinner and was going to hell because he lived with his girlfriend and did not go to church, and said that a person had to be a good Christian to be a good painter. He also said that he wanted to work with a Christian, because he believed that a Christian would not steal. In addition, he witnessed to members of complainant's family and to his girlfriend. Although petitioner's witnessing severely distressed complainant, he never mentioned that to petitioner, because he thought that it might affect his employment. Nevertheless, complainant did decline all of petitioner's invitations to attend church.

After petitioner discharged him for poor work performance,[1] complainant filed an unlawful employment practice complaint with BOLI. BOLI concluded that petitioner had committed an unlawful employment practice by discriminating against complainant on the basis of religion. Specifically, BOLI concluded that petitioner's religious advances constituted religious harassment.

ORS 659.030 provides, in part:

"(1)   [I]t is an unlawful employment practice:

---

[1] Complainant concedes that his discharge was not religiously motivated.

"* * * * *

"(b)   For an employer, because of an individual's * * * religion * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

In *In re Sapp's Realty*, No. 11-83, (BOLI January 31, 1985), BOLI held that an employer's religious harassment is a form of religious discrimination prohibited by ORS 659.030(1)(b). It defined "religious harassment" to include making religious advances when "such conduct has the purpose or effect of creating an intimidating, hostile or offensive working environment" from the perspective of a reasonable employee in the complainant's situation. BOLI found that petitioner violated the *Sapp's Realty* rule (the rule or BOLI's rule) by witnessing to complainant.

In his first assignment of error, petitioner contends that BOLI erred in applying a reasonable *employee* standard, because the nature of the work environment must instead be viewed from the perspective of a reasonable *employer*. Specifically, petitioner contends that he could not be held liable for creating a harassing environment without proof that a reasonable employer would have known of the harassing nature of the working environment. That assignment of error lacks merit, because BOLI applied the reasonable employer standard in its amended order.[2]

■   In his second, third and fourth assignments of error, petitioner makes an assortment of objections to BOLI's order. Combining the argument on those assignments, he contends that the evidence was insufficient to support BOLI's conclusion that the work environment was hostile, intimidating or offensive as viewed from the perspective of a reasonable person in complainant's situation.[3] BOLI made uncontroverted findings that:

[2] Although BOLI evaluated the evidence in this case from the perspective of a reasonable employer and also from the perspective of a reasonable employee, it did so only because it considered that those perspectives were the same. That is, BOLI said that a reasonable employer would know what conduct a reasonable employee in complainant's situation would find hostile, intimidating or offensive. Consequently, BOLI's standard can more accurately be referred to as a reasonable person standard.

[3] Petitioner asserts:

"The standard of review [for the second, third and fourth assignments of error] is whether the record contains substantial evidence to support the Agency's conclusion that [petitioner] so frequently voiced his religious opinions

"[Petitioner's] conduct occurred at least twice per week. It occurred for a month, which was the entire length of Complainant's employment with [petitioner]. It occurred both on and off the job, and invaded not only Complainant's personal life, but the personal lives of his fiancee and mother. [Petitioner] made it clear that he wanted to work with Christians, and repeatedly reminded Complainant that [petitioner] considered him a sinner because his life style did not conform to [petitioner's] religious beliefs. [Petitioner's] invitations to church were repeated regularly at work, and there was no indication that his comments would stop."

BOLI's other findings provide more detailed information concerning petitioner's witnessing, the characteristics of complainant and the nature of the work environment. On the basis of those findings, BOLI did not err in concluding:

"From the perspective of a 20 year old employee with Complainant's education [complainant had not completed high school] and experience, and in a situation where he worked closely with his harasser/employer, [petitioner's] religious conduct was sufficiently pervasive to alter the conditions of the employee's working environment, and had the effect of creating an intimidating and offensive working environment."

■     The special concurrence contends that BOLI's rule concerning religious harassment exceeds its rulemaking authority, because it prohibits employers from expressing religious beliefs even though no discrimination in conditions of employment occurred because of the employee's religion. In short, it asserts that BOLI's rule is unlawful because it does not require that the employer discriminate against the employee *because of the employee's* religion. That, however, is not BOLI's position.

---

to [complainant] that he created an illegal, abusive working environment based on religion."

Although we do not agree with petitioner that the assignments present only a question of substantial evidence, petitioner failed to make separate arguments, referenced to the appropriate standard of review, to support each separate assignment. Moreover, most of the argument that he does make is based on constitutional claims that he reasserts in a later assignment of error. Consequently, we will address petitioner's second, third and fourth assignments of error as framed by him, reserving his constitutional claims for later discussion.

BOLI's rule provides that religious advances consti-
tute discrimination when the employer's motivation for mak-
ing those advances is that the employee's religious beliefs are
different from the employer's. In fact, BOLI made a specific
finding that complainant was discriminated against because
of his religion.[4] That is discrimination *because of that individ-
ual's religion*, which is precisely what ORS 659.030(1)(b)
proscribes.

■   In his fifth assignment of error, petitioner inartfully
contends[5] that BOLI's order deprived him of his right to free
exercise of his religious beliefs and to free speech, protected
by the Oregon and United States constitutions. We address
the state constitutional issues first, beginning with the guar-
antees of religious freedom. *State ex rel Juv. Dept. v. Tucker*,
83 Or App 330, 333, 731 P2d 1051 (1987).

■   Article I, sections 2 and 3, of the Oregon Constitution
provide:

"(2)   All men shall be secure in the Natural right, to
worship Almighty God according to the dictates of their own
consciences. —

"(3)   No law shall in any case whatever control the free
exercise, and enjoyment of religeous [sic] opinions, or inter-
fere with the rights of conscience. — "

Those provisions guarantee, among other things, the free
exercise of religiously motivated practices. *Employment Div.
v. Rogue Valley Youth for Christ*, 307 Or 490, 498, 770 P2d
588 (1989). BOLI concedes that the enforcement of its rule
concerning religious harassment burdened petitioner's free
exercise of his religious beliefs. Nevertheless, it contends that
that burden is constitutionally permissible.

■■   When, as in this case, the enforcement of a law does
not always burden religious freedom, but may in some cases,
the interference with religious freedom is incidental, rather

---

[4] The special concurrence contends that that finding is not supported by
substantial evidence. To the contrary, the record fully supports BOLI's determina-
tion that complainant did not share petitioner's religious beliefs and that petitioner's
advances were motivated by that fact.

[5] Specifically, petitioner contends that "[t]he Commissioner erred in holding
that [petitioner's] constitutional rights are not violated by the holding in this case
* * *."

than direct. The standard we apply to evaluate such laws is clear:

> " 'The state may justify [an incidental] limitation on religion by showing that it is essential to accomplish an overriding governmental interest.' " *Employment Div. v. Rogue Valley Youth for Christ, supra*, 307 Or at 498. (Citations omitted.)[6]

Consequently, we must determine if BOLI's rule concerning religious harassment is essential to accomplish an overriding governmental interest.

■ BOLI submits that the interest advanced by the application of its rule is in preventing religious discrimination. That, after all, is the purpose of ORS 659.030(1)(b), the statute that BOLI's rule implements. The state has an overriding interest in preventing religious discrimination. *See E.E.O.C. v. Townley Engineering & Mfg. Co.*, 859 F2d 610, 620 (9th Cir 1988), *cert denied* 489 US 1077 (1989). However, BOLI's test for what constitutes religious discrimination is not *essential* to advance that interest.

■■ A law that burdens the free exercise of religion is not essential, unless it represents the least restrictive means available to advance the overriding governmental interest. *See State ex rel Juv. Dept. v. Tucker, supra*, 83 Or App at 334. Under BOLI's rule, religious discrimination results whenever a reasonable person would find an employer's religious advances hostile, intimidating or offensive. Petitioner contends that BOLI's definition of what constitutes discrimination would be less restrictive if it incorporated an intent element. We agree. Oregon's guarantees of religious freedom are intended to permit minorities to engage in religious practices that the majority might find objectionable. Those guarantees would be meaningless if religious conduct could

---

[6] In *Employment Div. v. Rogue Valley Youth for Christ, supra*, the plaintiff sought to assess unemployment compensation taxes against the defendant religious organization. The statutes and rules authorizing those assessments were construed to apply to all employers. Because most employers are not religious organizations, compliance with or enforcement of those rules would not necessarily burden an employer's religious freedom. Nevertheless, the defendant argued that, if it was required to pay the taxes, that would burden its exercise of religious freedom, because it was a religious organization. The court assumed that that was true, but found that burden to be constitutionally permissible. *Employment Div. v. Rogue Valley Youth for Christ, supra*, 307 Or at 499. *Rogue Valley* is the Oregon Supreme Court's last decision concerning incidental restraint free exercise challenges under the Oregon Constitution, so we must follow it.

be prohibited whenever a "reasonable person" would consider that conduct inappropriate. Consequently, protecting the sensibilities of a "reasonable person," without more, is not the least restrictive means available to advance the government's interest when religious freedom is at stake.

Although petitioner's alternative would be less restrictive than BOLI's reasonable person standard, we cannot say that it is the least restrictive means of eliminating religious harassment, *i.e.*, discrimination. That is BOLI's determination to make in the first instance. Nevertheless, we can say that, because there is a less restrictive alternative, BOLI erred in applying its definition of religious harassment to burden petitioner's exercise of his religious beliefs.

■ The special concurrence contends that BOLI's rule concerning religious harassment is facially unconstitutional, because it directly interferes with religious freedom. It relies on *Cooper v. Eugene Sch. Dist. No. 4J*, 301 Or 358, 723 P2d 298 (1986), *appeal dismissed* 480 US 942 (1987), where the court entertained a free exercise challenge to a statute that prohibited teachers from wearing "any religious dress while engaged in the performance of duties as a teacher," and another statute that provided that a violation of the former statute could result in suspension from employment. Because those statutes could not be complied with or enforced without burdening the free exercise of religion, the statutes were subject to a facial challenge for overbreadth and were saved only by a narrowing construction. 301 Or at 378. Because BOLI's rule can be enforced without burdening religious freedom,[7] that case is inapposite.

BOLI's rule is not subject to a facial attack under Article I, sections 2 and 3. Instead, when BOLI's application of its rule burdens a person's religious freedom, that person must challenge the law as applied. That is what petitioner did. Although we conclude that BOLI cannot constitutionally apply its rule to petitioner, the rule is not invalid, because it has other constitutional applications and is not facially void.

---

[7] For example, if petitioner had harassed complainant by derogating complainant's religious beliefs, without exercising or expressing his own, he could not complain that penalizing him for that harassment burdened his right to exercise freely his religious beliefs.

The special concurrence contends that a law that only incidentally burdens religious freedom is not subject to constitutional scrutiny on free exercise grounds. It relies primarily on *Smith v. Employment Div.*, 301 Or 209, 216, 721 P2d 445 (1986), *vacated on other grounds* 485 US 660, 108 S Ct 1444, 99 L Ed 2d 753 (1988). In that case, the claimant was fired by his employer for using peyote as part of a religious ceremony. The claimant sought unemployment benefits, but, under the Employment Division's rules, no unemployment benefits were available to any employee fired for what the employer permissibly regarded as misconduct. Because the claimant had been fired for what his employer considered to be misconduct, the Division denied his request for unemployment benefits. The claimant appealed, arguing that the denial of unemployment benefits burdened his right to freely exercise his religious beliefs. The court disagreed:

> "Claimant was denied benefits through the operation of a statute that is neutral both on its face and as applied. The law and the rule defining misconduct in no way discriminates against claimant's religious practices or beliefs. If claimant's freedom to worship has been interfered with, that interference was committed by his employer, not by the unemployment statutes." 301 Or at 216.

In concluding that the state had not burdened the claimant's free exercise of his religious beliefs, the *Smith* court strongly cautioned against reading its decision too broadly:

> "We do not imply that a governmental rule or policy disqualifying a person from employment or from public services or benefits by reason of conduct that rests on a religious belief or a religious practice could not impinge on the religious freedoms guaranteed by Article I, sections 2 and 3. * * * But here *it was not the government that disqualified claimant from his job for ingesting peyote.* And the rule denying unemployment benefits to one who loses his job for what an employer permissibly considers misconduct, conduct incompatible with doing the job, as itself a neutral rule, as we have said. As long as disqualification by reason of the religiously based conduct is peculiar to the particular employment and most other jobs remain open to the worker, we do not believe *that the state is denying the worker a vital necessity* in applying the 'misconduct' exception of the unemployment compensation law." 301 Or at 216. (Emphasis supplied.)

Because it was the employer, not the state, that prohibited the claimant from practicing his religion, and the claimant chose to work for that employer, there was insufficient state action to support the claimant's claim of a constitutional deprivation.

In *Smith*, the Division's rule did not burden the claimant's religious practices, because he could avoid the application of that rule by choosing an employer which did not consider peyote use work-related misconduct. That is not true here. If petitioner hires an employee, he is bound by BOLI's rule. Consequently, *Smith* is inapposite. However, because enforcement of BOLI's rule would not necessarily burden religious practices, the restraint on petitioner's religious freedom, if any, is incidental, not direct. As indicated in *Employment Div. v. Rogue Valley Youth for Christ, supra*, petitioner must challenge BOLI's rule as applied, which is what he did.

Because we conclude that petitioner was deprived of his rights under Article I, sections 2 and 3, of the Oregon Constitution, we need not address his other constitutional claims.

Reversed and remanded for reconsideration.

**EDMONDS, J.,** specially concurring.

The lead opinion holds that petitioner was deprived of his rights of freedom to worship and freedom to express religious opinion under Article I, sections 2 and 3, of the Oregon Constitution by the Bureau of Labor and Industries' (BOLI) sanction. Although I concur that petitioner's right to express his religious opinion was unconstitutionally interfered with when BOLI fined him $3,000 for expressing his beliefs to his employee, I write separately to express my differences with the lead opinion's analysis.

The lead opinion says much that is unnecessary and much that should concern all people about BOLI's infringement on their right to express themselves concerning religious matters in the workplace. The constitutional guarantee of the freedom to express beliefs about religious subjects, whether those expressions encompass atheistic, agnostic or a particular religion's viewpoints, must be preserved as

intended by the founding fathers.[1] However, in this case, we should not reach the constitutional issue.[2] BOLI's sanction is for conduct that is not prohibited under ORS 659.030(1)(b). That statute makes it unlawful "to discriminate" on the basis of an employee's religion, "in compensation or in terms, conditions or privileges of employment."[3] The statute affords an individual protection from discrimination on the basis of *that individual's religion.*[4] BOLI's rule, however, makes "religious advances" an unlawful employment practice when they have the effect of creating an intimidating, hostile or offensive environment from the perspective of a reasonable employee. BOLI's rule and its application of that rule do not grasp the focus of the protection under the statute.

First, BOLI's rule exceeds the rule-making authority granted to it by ORS 659.030(1)(b). The statute affords protection from discrimination in compensation, terms, conditions or privileges of employment on the basis of the *employee's* religion, race, sex, color, national origin, marital status or age. Discrimination for other reasons does not fall within the proscription of the statute. BOLI has no authority to expand the protection of the statute by rule. *U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 542 P2d 900 (1975). BOLI's

---

[1] While the employer in this case is an Evangelical Christian, the belief in a traditional, or any, "God" is not a prerequisite to a finding that a belief is religious. *Christofferson v. Church of Scientology*, 57 Or App 203, 240, 644 P2d 577, *rev den* 293 Or 456 (1982), *cert den* 459 US 1206 and 459 US 1227 (1983).

[2] If a case can be decided on a different basis, we are required to refrain from making a constitutional holding. *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 687 P2d 785 (1984). In *Lloyd Corporation v. Whiffen*, 307 Or 674, 773 P2d 1294 (1989), the court said:

> "Avoiding needless constitutional rulings is not a technical nicety of judicial etiquette. If there is no duty to decide the constitutionality of a law, there is a duty not to decide it." 307 Or at 680 n 4.

[3] ORS 659.030(1)(b) also protects an individual from discrimination because of the religion of any other person with whom the individual associates.

[4] ORS 659.030(1)(b) is patterned after 42 USC § 2000(2)(a)(1) (Title VII). *Seitz v. Albina Human Resources Center*, 100 Or App 665, 672, 788 P2d 1004 (1990). ORS 659.030 should be interpreted the same way as Title VII. Moreover, relevant federal law should be taken into account. *Hillesland v. Paccar, Inc.*, 80 Or App 286, 294, 722 P2d 1239, *rev den* 302 Or 299 (1986). Title VII is designed to protect "an imposition on an *individual* plaintiff's religious beliefs, not the employer's beliefs." *McCrory v. Rapides Regional Medical Center*, 635 F Supp 975, 979 (WD La), *aff'd* 801 F2d 396 (5th Cir 1986) (emphasis in original); *see also E.E.O.C. v. Townley Engineering & Mfg. Co.*, 859 F2d 610, 620 (9th Cir 1988), *cert den* 489 US 1077, *mod* 946 F2d 898 (9th Cir 1991).

rule makes expression of religious opinion unlawful even though an employer does not discriminate because of the employee's religion. Under the rule, an employer commits an unlawful employment practice if the employer merely expresses religious opinions to the employee to the extent that the employee considers the statements offensive. That enlargement of the coverage of the statute is without authority and renders the rule unlawful.

The lead opinion says such religious advances "constitute discrimination when the employer's motivation for making those advances is that the employee's religious beliefs are different than the employer's." 120 Or App at 278. That interpretation ignores the plain language of the statute, which requires discrimination based on an "employee's" religion. The statute does not make religious advances actionable when the employer and the employee hold different religious beliefs and the employer chooses to express his belief. Moreover, if it did prohibit an employer from expressing his religious opinions when an employee held different religious beliefs, it would violate Article I, section 2 and 3. Those provisions are based on the notion that individuals are entitled to hold different religious beliefs and to express their opinions about those beliefs without constraint by the government.[5] If possible, we are required to give statutes a constitutional construction. *Anderson v. Alexander*, 191 Or 409, 229 P2d 633, *reh den* 230 P2d 770 (1951). The lead opinion's construction of BOLI's rule would render ORS 659.030(1)(b) constitutionally invalid.

The dissent says that "freedom *from* religion is as important as freedom to *practice* religion" and that "freedom *from* religion is entitled to the same level of constitutional, statutory and administrative protection in the workplace." 120 Or App at 293. (Emphasis in original.) The dissent is wrong. Although the expression of religious beliefs by an employer may require some accommodation for the beliefs of employees,[6] there is no generalized constitutional right to be

---

[5] The lead opinion, by stating that discrimination occurs when the employer's motive is that the employee's religious beliefs are different, misses the possibility that an employer may discriminate against an employee who holds the same religious beliefs.

[6] *See E.E.O.C. v. Townly Engineering & Mfg. Co., supra* n 4, 859 F2d at 621.

free from religious expression in the workplace. Apparently, the dissent would sanitize all religious expression from the workplace if the expression annoyed a worker. That proposition cannot be constitutional. ORS 659.030(1)(b) does not protect an employee from religion but rather from discrimination based on the employee's religious beliefs. The focus of the statute is on discrimination because of those beliefs. In contrast, the focus of the rule is on the nature and extent of the employer's expression. The statute does not prohibit an employer from expressing religious opinions. It is the difference in focus that causes the rule to be an unlawful enlargement of the statute.

Second, BOLI's finding, that the employee was discriminated against because of *his* religion, is not supported by substantial evidence.[7] BOLI found that petitioner's conduct "was directed at [employee] because of [employee's] religious beliefs." However, BOLI's findings about the employee's religious beliefs are:

> "12)   During times material, Complainant did not go to church. He attended Sunday school when he was 'very little,' and went to kindergarten in a church. He sometimes went to church on Christmas Eve with his mother. He had not gone to church regularly since he was in kindergarten."

Notably missing is a finding that the employee had a religious belief that caused petitioner to discriminate against him. Instead, BOLI's findings focus on the nature and extent of petitioner's religious beliefs. In fact, the Board's findings indicate that, other than the invitations to church, the majority of petitioner's comments were directed at the employee's way of life. A "way of life" is not entitled to the status of a "religious belief" if based on only secular considerations. *Christofferson v. Church of Scientology, supra* n 1, 57 Or App at 240.

Even if the rule is a valid exercise of BOLI's delegated authority, ORS 659.030(1)(b)'s prohibition against religious discrimination requires more than what occurred here. It

---

[7] We review the findings of an agency for substantial evidence. ORS 183.482(8)(c). Included within that standard of review is the concept that an agency's conclusion must reasonably follow from its findings of fact. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 639 P2d 90 (1981).

makes unlawful, discrimination that results from harassment[8] because of the employee's beliefs, not the employer's. The fact that the employee took offense[9] to petitioner's repeated invitations to attend petitioner's church and the expression of petitioner's religious opinions is not tantamount to discrimination because of the employee's religious beliefs. For an unlawful employment practice to have occurred, BOLI must have found that the employee was harassed because of his religious beliefs. Petitioner was not even aware that his statements were offensive to the employee, because the employee did not express those sentiments to him. There is no evidence to support BOLI's conclusions.

Third, BOLI analogized the instant situation to a work environment involving sexual harassment. To find a hostile environment, BOLI had to find that the religious enmity, *because of the employee's religious beliefs*, was pervasive and exceeded casual comments or sporadic conversation.[10] *See Snell v. Suffolk County*, 782 F2d 1094, 1103 (2d Cir 1986). The absence of any evidence that the statements were offensive because of the employee's religious beliefs or that the employee expressed to petitioner that he was offended by the statements, makes it impossible to determine if a hostile environment existed.

Moreover, BOLI's conclusion that a hostile environment existed is inconsistent with its own findings. BOLI

---

[8] The elements of a *prima facie* case of religious harassment are:

"(1) plaintiff belongs to a protected class; (2) plaintiff was subject to unwelcome religious harassment; (3) the harassment was based upon religion; (4) the harassment affected a term, condition or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action."

*Vaughn v. AG Processing, Inc.*, 459 NW2d 627, 632 (Iowa 1990); *see also Beasley v. Health Care Service Corp*, 940 F2d 1085, 1088 (7th Cir 1991).

[9] BOLI's findings indicate that the employee expressed his offense to family members and co-workers but not to petitioner. Moreover, on occasion, the employee's response to petitioner's religious advances implied that future advances might be fruitful.

[10] In proving a claim for a hostile work environment due to religious harassment, the plaintiff must show that but for the fact of the employee's religion, the employee would not have been the object of harassment. *Vaughn v. AG Processing, Inc., supra* n 8, 459 NW2d at 633; *Henson v. City of Dundee*, 682 F2d 897, 904 (11th Cir 1982) (discussing hostile work environment in sexual harassment claims).

found that petitioner never criticized any religion or used religious slurs, that petitioner was being obedient to the "basics" of his religious beliefs when he "witnessed" to the employee and that not to do so would have violated those beliefs, and that he discharged the employee because of poor work performance. Also, there is no evidence that petitioner's statements were so unreasonably intimidating, hostile or offensive so as to pollute a healthy working environment with discrimination, destroy the emotional and psychological stability of minority group workers or adversely affect a reasonable employee's ability to perform the tasks required by the employer.[11] *See, e.g., Man-of-Jerusalem v. Hill,* 769 F Supp 97, 101 (EDNY 1991). BOLI's findings are not supported by substantial evidence nor do its conclusions follow from the findings that it did make.[12]

Should we reach the constitutional issue, then I differ with the lead opinion's analysis. What is at stake here is the right of an employer to express religious opinions in the workplace, a right guaranteed by both the Oregon and the federal constitutions. To be constitutional, a law must accommodate both the employer's right to express religious beliefs as well as the employee's right to not be discriminated against

---

[11] The rationale behind "hostile environment" discrimination is that the statute affords an employee "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Mentor Savings Bank v. Vinson,* 477 US 57, 65, 106 S Ct 2399, 91 L Ed 2d 49 (1986). In this case, the facts do not support the conclusion that petitioner's religious advances constituted discriminatory intimidation, ridicule, or insult. Moreover, in *Weiss v. United States,* 595 F Supp 1050, 1056 (ED Vir 1984), the court described what constitutes religious harassment:

"An occasional offensive religious epithet by a co-worker does not necessarily give rise to a Title VII claim against an employer. Nonetheless, when an employee is repeatedly subjected to demeaning and offensive religious slurs before his fellows by a co-worker and by his supervisor, such activity necessarily has the effect of altering the conditions of his employment within the meaning of Title VII."

[12] This case is factually unlike *In re Sapp's Realty,* No. 11-83 (BOLI January 31, 1985), on which BOLI relies. There, BOLI found that the complainant was raised in the Lutheran church and had been confirmed as a Lutheran, that one respondent had made derogatory comments about Protestants and negative comments about the complainant's Lutheran religion, that the complainant perceived some of the comments to be in the nature of "ridicule," and that the complainant made it clear to respondent that she did not want to hear him discuss religion. BOLI concluded that the submission to the employer's religious advances was a condition of the complainant's continued employment. Moreover, BOLI noted that the employer never claimed that their religious advances were required by their religion.

because of the employee's religious beliefs. Under the lead opinion and BOLI's rule, there is no accommodation, and when the lead opinion says that "BOLI's rule can be enforced without burdening religious freedom * * *," it is plainly wrong. 120 Or App at 280.

ORS 659.030(1)(b) requires that an employee must have been discriminated against in the terms or the conditions of his employment because of his religious beliefs before there is a violation. The statute extends to the workplace and carries out the protection contemplated by the constitutional provisions regarding freedom of religion: that an employee not be discriminated against because of his religious beliefs. Although ORS 659.030(1)(b) protects an employee's religious expression and belief, BOLI's rule restricts the expression by an employer of his religious belief. It broadly defines religious harassment to include "religious advances." "Religious advances" necessarily includes religious expression and, therefore, the rule directly targets religious expression. The lead opinion says that BOLI's rule is not subject to a facial attack. 120 Or App at 280. If a statute or rule burdens religious expression on its face, as this rule does, that assertion cannot reasonably be made.[13] Moreover, it would be difficult to convince petitioner that a $3,000 fine imposed under the rule does not directly burden his religious expression. Because the rule makes some religious expression an unlawful employment practice, it implicates Article I, section 3.

Article I, section 3, provides:

"No law shall in any case whatever control the free exercise and enjoyment of religeious [*sic*] opinions or interfere with the rights of conscience."

In *Cooper v. Eugene Sch. Dist. No. 4J*, 301 Or 358, 371, 723 P2d 298 (1986), *appeal dismissed* 480 US 942 (1987), the court emphasized the importance of section 3:

"The religion clauses of Oregon's Bill of Rights, Article I, sections 2, 3, 4, 5, 6 and 7, are more than a code. They are

---

[13] The lead opinion also says that "[t]he special concurrence contends that a law that only incidentally burdens religious freedom is not subject to constitutional scrutiny * * *." 120 Or App at 281. It is not apparent from where that conclusion springs. Regardless, the assertion is mistaken.

specifications of a larger vision of freedom for a diversity of religious beliefs and modes of worship and freedom from state-supported official faiths or modes of worship. The cumulation of guarantees, more numerous and more concrete than the opening clause of the First Amendment, reinforces the significance of the separate guarantees."

At issue in *Cooper* was a law that prohibited religious dress while performing public school teaching duties. The court said:

> *"The law here at issue is not a general regulation, neutral toward religion on its face and its policy,* like the unemployment benefits standards that we sustained against attack under the Oregon Constitution (though not under the First Amendment) by claimants who had been discharged for religiously motivated conduct in *Smith v. Employment Division,* [301 Or 209, 721 P2d 445 (1986), *vacated and remanded sub nom, Employment Div. v. Smith,* 485 US 660, *remanded to Employment Appeals Board, Smith v. Employment Division,* 307 Or 68, 763 P2d 146 (1988), *rev'd and remanded, Employment Div. v. Smith,* 494 US 872, *on remand, Smith v. Employment Div.,* 310 Or 376, 799 P2d 148 (1990),] and *Black v. Employment Division,* 301 Or 221, 721 P2d 451 (1986). The cases would be comparable if a school regulation prescribed how teachers should dress while on duty without taking account of religious considerations. Then we would have only an issue of statutory authority to make such a regulation, *see Hysong v. Gallitzin School Dist.,* 164 Pa 629, 30 A 482 (1894); *Neuhaus v. Federico,* 12 Or App 314, 505 P2d 939 (1973), and an individual claim to exemption on religious grounds. * * * *But ORS 342.650 is not neutral toward religion. On the contrary, the religious significance of the teacher's dress is the specific target of this law.* The law singles out a teacher's religious dress because it is religious and to the extent that its religious significance is apparent when the wearer is engaged in teaching. The issue therefore is whether the law infringes the right guaranteed to 'all men' by Article I, section 2 of the Oregon Constitution 'to worship Almighty God according to the dictates of their own consciences,' or 'control[s] the free exercise, and enjoyment of religious opinions or interfere[s] with the rights of conscience' contrary to Article I, section 3." 301 Or at 368. (Emphasis supplied.)

By that language, the court drew a distinction between laws like ORS 659.030(1)(b), which regulate conduct

and do not specifically target religious expression, and laws like BOLI's rule, which directly limit the expression of religious beliefs.

In *Cooper*, the court said:

"Thus, a law restricting dress specifically for being 'religious dress' cannot stand as a regulation of 'conduct' rather than 'belief' or 'worship.' If such a law is to be valid, it must be justified by a determination that religious dress necessarily contravenes the wearer's *role or function at the time and place beyond any realistic means of accommodation.*" 301 Or at 372. (Emphasis supplied.)

*Cooper* teaches us that, for BOLI's rule to be constitutional, it must accommodate petitioner's religious expression in the light of his responsibility to provide a non-discriminatory workplace.[14] Although the *Cooper* rule requires accommodation, the lead opinion's analysis grants BOLI a license to restrict expression under the cloak of an overriding governmental interest. It views BOLI's rule as an indirect regulation of conduct and not a direct regulation of expression. That causes it to mistakenly rely on the "least restrictive means" test in *Employment Div. v. Rogue Valley Youth for Christ*, 307 Or 490, 770 P2d 588 (1989). There, the court interpreted a law that was not specifically directed at religious expression. BOLI's rule is more like the statute at issue in *Cooper*. Because the constitutionality of BOLI's rule is what is at issue and not the constitutionality of ORS 659.030(1)(b), and because BOLI's rule specifically targets religious expression, we must exercise great caution in any leeway that is granted to circumscribe what is protected under Article I, section 3.

According to the tenor of its arguments, BOLI's objective is to protect the workplace environment from an employer's expression of religious advances when that expression is offensive to a "reasonable employee."[15] BOLI's

---

[14] When an employer and an employee's beliefs conflict, the employer may be required to reasonably accommodate the employee's beliefs such as not requiring the employee to attend office devotional services. *See E.E.O.C. v. Townley Engineering & Mfg. Co., supra* n 4, 859 F2d at 620.

[15] The dissent would "curb" the religious expression of an employer because "a special relationship of power and necessary subservience exists [between the employer and employee]." 120 Or App at 293. I find it alarming that the dissent

rationale equates religious advances, made by an employer to an employee, with sexual harassment. Religious advances or expression are protected expressly and require accommodation under the constitution. Sexual harassment is a form of discrimination that occurs because of an employee's gender. It has no constitutional protection. The comparison is untenable. Although BOLI's rule would permit limited sporadic religious advances, the effect of such a rule is that the extent of an employer's religious expression is controlled by the government's enforcement of a standard imposed by a "reasonable" employee. The "reasonable" employee standard is not synonymous with the scope of protection afforded by the constitution. The standard will vary depending on the religious beliefs of a "reasonable" employee as envisioned by BOLI. That cannot be the law.[16]

The lead opinion encourages BOLI's pursuit, saying that, "[a]lthough we conclude that BOLI cannot constitutionally apply its rule to petitioner, the rule is not invalid, because it has other constitutional applications and is not facially void." 120 Or App at 280. I am persuaded that religious expressions of the kind here can never be constitutionally censured in the workplace because they are protected under both constitutions.

The constitutional guarantee of freedom of such expression means little if the government can promote an overriding interest, as the lead opinion suggests, in order to restrict or eliminate without accommodation what otherwise is guaranteed, simply because it occurs in the workplace. If we reach the constitutional issue, we should hold that BOLI's present rule exceeds constitutional bounds, because it fails to accommodate an employer's expression of religious belief or opinion. Petitioner asked his employee to go to his church and

---

would hold that an individual loses constitutional rights simply by becoming an employer.

[16] Even if the standard of a "reasonable person" or "reasonable employer" is used, that does not accommodate the constitutional right of employers holding minority religious beliefs under the constitution to express those beliefs. Moreover, such a standard results in the same vice that a "reasonable employee" standard creates, because it imposes shifting constitutional goal posts depending on the hearing officer's value judgments and what the hearing officer believes a "reasonable employer" would find offensive.

told the employee about his beliefs. He did not discriminate against the employee because of the employee's religion. On those facts alone, no administrative rule can lawfully prohibit such expression, because it is clearly protected under section 3 and, therefore, requires accommodation.[17]

This case is not about the protection of an employee from discrimination because of his religious beliefs. This case is about an employee who took offense because of his employer's expression of his religious beliefs. No one questions that the state has a legitimate interest in protecting employees from discrimination, but no discrimination occurred here. ORS 659.030(1)(b) is intended solely to protect an employee from discrimination because of his religious beliefs. It is consistent with the axiom that a valid governmental purpose "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 US 479, 488, 81 S Ct 247, 5 L Ed 2d 231 (1960). BOLI's rule and the lead opinion's endorsement of it turn the statute on its head to give the state a sword, not against the evil of discrimination, but against all employers who dare to express their own religious beliefs in the workplace.

The framers of the constitution would shudder if they were aware of BOLI's effort to erode the right to express religious opinions. Based on the history of governmental infringement of religious expression, they founded our nation and our state on the principles of freedom of speech and of religious expression and practice. Those rights are not forfeited in the workplace. *See Merrick v. Board of Higher Education*, 116 Or App 258, 841 P2d 646 (1992). Whether some kinds of religious expression lose their protection under the constitution because they constitute "discrimination" in the work place under ORS 659.030(1)(b), can only be decided

---

[17] The fact that an employer and an employee may hold and express conflicting religious beliefs does not necessarily make the employer's expression of his beliefs intimidating, hostile or offensive to those of the employee. *See E.E.O.C. v. Townley Engineering & Mfg. Co.*, *supra* n 4, 859 F2d at 620. It is only when the employee is treated differently because of his religious beliefs or when his religious beliefs are not accommodated by the employer, does that potential arise. The focus of the inquiry remains whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin. *Furnco Construction Corp. v. Waters*, 438 US 567, 577, 98 S Ct 2943, 57 L Ed 2d 957 (1978).

on a case by case basis, because of the guarantees of freedom of speech and religious practice. BOLI's rule and its application to the facts of this case constitute a grave encroachment on rights that the citizens of our country have enjoyed for over two hundred years. I will not join in encouraging the wholesale "chilling" of those rights.

**RIGGS, J.,** dissenting.

Once again, we witness the minor phenomenon that occurs when the result of our analysis is dictated primarily by the way in which we define the issue or focus our inquiry. What is at stake here is whether BOLI's rule can survive as a curb on *conduct* by an employer where a special relationship of power and necessary subservience exists. Conduct is not always protected merely because someone chooses to invoke constitutional guarantees of expression or religion.

Freedom from religious harassment exists for atheists, agnostics and the nonobservant, as well as for the demonstrably religious. For many, freedom *from* religion is as important as freedom to *practice* religion. I believe freedom *from* religion is entitled to the same level of constitutional, statutory and administrative protection in the workplace. I also do not agree with the lead opinion that an intent element is essential in order to uphold BOLI's rule from a facial or an as-applied attack. I am not sure how intent could ever be shown in this context.

While it is true that Oregon's guarantees of religious freedom are intended to permit minorities to engage in religious practices that the majority might find objectionable, what occurred here went far beyond the mere providing of religious information. I would therefore hold that the intensity of uninvited religious proselytizing by the employer in this case constituted common harassment and religious discrimination within the meaning of the rule and the statute, and that such conduct is not constitutionally protected.

With our proper focus on the rule's legitimate purpose of implementing ORS 659.030(1)(b) and preventing religion from interfering with the employment relationship through discrimination, I would uphold the rule and affirm the order.

I dissent.