735 F.2d 388
 34 Fair Empl.Prac.Cas. 1570,
34 Empl. Prac. Dec. P 34,410, 17 Ed. Law Rep. 1051
 Gerald PINSKER, on behalf of himself and all others
similarly situated, Plaintiff-Appellant,
and
Aurora Education Association, Plaintiff-Intervenor, Appellant,
v.
JOINT DISTRICT NUMBER 28J OF ADAMS AND ARAPAHOE COUNTIES, a
public corporation, Defendant-Appellee.
 No. 83-1240.
 United States Court of Appeals,
Tenth Circuit.
 May 30, 1984.
 
 William P. Bethke, Denver, Colo. (Larry F. Hobbs, Denver, Colo., with him on brief) of Hobbs, Bethke & Associates, Denver, Colo., for plaintiffs-appellants.
 Bruce W. Sattler, Denver, Colo. (Carey E. Matovich, Denver, Colo., with him on brief) of Holland & Hart, Denver, Colo., for defendant-appellee.
 Before McWILLIAMS and LOGAN, Circuit Judges, and CAMPOS, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiffs Gerald Pinsker and the Aurora Education Association[1] appeal from the district court's dismissal of their claim under Title VII of the 1964 Civil Rights Act, 42 U.S.C. Secs. 2000e to 2000e-17, and from the district court's finding that they had not shown a violation, cognizable under 42 U.S.C. Sec. 1983, of the right to free exercise of religion guaranteed by the First and Fourteenth Amendments, 554 F.Supp. 1049.
 
 
 2
 Pinsker is a teacher in the Aurora, Colorado, public schools. He claims that the defendant school district's school schedule and leave policy discriminate against him and other Jewish teachers on the basis of religion and unconstitutionally burden his right to free exercise of religion. The basis of his claim is that the school year in the district is arranged so that Christmas is not a school day, and in most school years there has been no school on Good Friday or Good Friday afternoon; thus, Christian teachers need not use their personal leave time or take unpaid leave to observe religious holidays. Pinsker does not work on three Jewish holidays: one day for Yom Kippur and two days for Rosh Hashanah. In some years all three of those holidays fall on school days.
 
 
 3
 The leave policy in the defendant district is a product of collective bargaining. A teacher has a pool of twelve days of paid leave, all of which the teacher may use for sick leave and parts of which the teacher may use for other specified purposes. A teacher may use a maximum of two days from the pool for "special leave." Teachers have been allowed to use special leave to observe Jewish holidays. Only twenty teachers may take special leave on any one day.
 
 
 4
 During the six years before he brought suit Pinsker took a total of three days of unpaid leave to celebrate Jewish holidays. In 1981, for example, Yom Kippur and both days of Rosh Hashanah fell on school days, so Pinsker used his two days of special leave and took one day of unpaid leave to celebrate those holidays. Apparently defendant did not actually dock Pinsker's pay for that day of "unpaid" leave. Also, although twenty teachers had already signed up for special leave on one of the Jewish holidays in 1981, Pinsker was allowed to take special leave on that day.
 
 
 5
 * Under Title VII it is an unlawful employment practice for an employer
 
 
 6
 "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."
 
 
 7
 42 U.S.C. Sec. 2000e-2(a)(1). Pinsker still works for defendant, and the terms and conditions of his employment are identical to those of other teachers similarly situated. However, 42 U.S.C. Sec. 2000e(j) provides:
 
 
 8
 "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."
 
 
 9
 The Supreme Court has held that the intent and effect of this definition of "religion" is to make it a violation of Sec. 2000e-2(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of employees and prospective employees. Trans World Airlines v. Hardison, 432 U.S. 63, 74, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113 (1977). Simply put, Title VII requires reasonable accommodation or a showing that reasonable accommodation would be an undue hardship on the employer. McDaniel v. Essex International, Inc., 571 F.2d 338, 341 (6th Cir.1978). In this case Pinsker essentially contends that his employer failed to reasonably accommodate his religious practices.
 
 
 10
 Pinsker does not suggest that he should receive more paid leave or other special treatment. Rather, he argues that Title VII requires the defendant to institute a generally applicable policy that is less burdensome to his religious practices than its present policy. At trial plaintiffs showed that other school districts have leave policies under which Pinsker would not have to take unpaid leave in a year when Yom Kippur and both days of Rosh Hashanah fell on school days. For example, one district allows three days of religious leave. Another district allows teachers to make up religious leave by doing extracurricular work.
 
 
 11
 Title VII requires reasonable accommodation. It does not require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated. Nor does Title VII require employers to accommodate an employee's religious practices in a way that spares the employee any cost whatsoever. See Brener v. Diagnostic Center Hospital, 671 F.2d 141, 145-46 (5th Cir.1982); Chrysler Corp. v. Mann, 561 F.2d 1282, 1285 (8th Cir.1977), cert. denied, 434 U.S. 1039, 98 S.Ct. 778, 54 L.Ed.2d 788 (1978). Defendant's policy and practices jeopardized neither Pinsker's job nor his observation of religious holidays. Because teachers are likely to have not only different religions but also different degrees of devotion to their religions, a school district cannot be expected to negotiate leave policies broad enough to suit every employee's religious needs perfectly. Defendant's policy, although it may require teachers to take occasional unpaid leave, is not an unreasonable accommodation of teachers' religious practices. Thus, the trial court correctly determined that plaintiff did not make a prima facie showing of discrimination.
 
 II
 
 12
 Plaintiffs also claim that defendant's leave policy unconstitutionally burdens Pinsker's First Amendment right to free exercise of religion. The trial court correctly characterized the issue as whether the economic impact of losing a day's wages in order to attend a religious service is a denial of freedom of religion.
 
 
 13
 In Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), the Supreme Court considered whether the First Amendment permits a state to deny unemployment benefits to a man who quit his job because it required him to engage in behavior that violated his religious beliefs. The Court set out the following standard:
 
 
 14
 "Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists."
 
 
 15
 Id. at 717-18, 101 S.Ct. at 1432. Loss of a day's pay for time not worked does not constitute substantial pressure on a teacher to modify his or her behavior. Cf. Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961) (Sunday closing laws do not deny free exercise of religion even though they work to the economic disadvantage of Orthodox Jewish merchants whose religion requires them to close on Saturday as well).
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 Aurora Education Association, the collective bargaining agent for teachers in the defendant school district, intervened on the side of Pinsker in this action. The parties stipulated that any relief provided Pinsker would be provided to other teachers of his religion