**Ben–Siyon Brasch MAN–OF–JERUSALEM, Plaintiff,**

v.

**Stanley HILL, as Executive Director of New York City District Council 37 of American Federation of State, County & Municipal Employees; Guido Menta, as Division Director of Professional and White–Collar Division of New York City District Council 37 of American Federation of State, County & Municipal Employees; Robert Crilly, as President of Local 2627 of New York City District Council 37 of American Feder-**ation of State, County & Municipal Employees; David Dinkins, as Mayor of the City of New York; Barbara J. Sabol, as Administrator/Commissioner of the Human Resources Administration of the City of New York; Paul Roth, personally and as an executive of the Human Resources Administration of the City of New York; Gary Wiseltier, personally and as an executive of the Human Resources Administration of the City of New York; Louis Lista, personally and as executive of the Human Resources Administration of the City of New York; Mitchell Tarnapol, personally and as Equal Employment Opportunity Officer for the Human Resources Administration of the City of New York; Alice Barbosa, personally and as Contract Compliance Officer of the Human Resources Administration of the City of New York; Ruby Ruffin, personally and as an employee of the Human Resources Administration of the City of New York; Helen Ferrante, personally and as an employee of the Human Resources Administration of the City of New York; John Goolsby, as an employee of the Human Resources Administration of the City of New York; Defendants, jointly and severally.**

No. CV–91–0665.

United States District Court, E.D. New York.

Aug. 14, 1991.

Ben–Siyon Brasch Man–of–Jerusalem, pro se.

Geoffrey Mort, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

### GLASSER, District Judge:

Plaintiff, a computer programmer employed by the New York City Human Resources Administration ["HRA"], brought this action pursuant to: 42 U.S.C. §§ 1981, 1983 and 1985; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d–1; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5; the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); the first, eighth and fourteenth amendments to the Constitution; and the New York City Charter and Collective Bargaining Law. Proceeding pro se, plaintiff seeks injunctive relief, compensatory and punitive damages. Defendants David Dinkins, Barbara Sabol, Paul Roth, Gary Wiseltier, Louis Lista, Mitchell Tarnapol, Alice Barbosa, Ruby Ruffin, Helen Ferrante, and John Goolsby [collectively, the "City defendants"], have moved the court for an order dismissing the complaint for failure to state a claim, pursuant to Rule 12(b)(6), Fed.R.Civ.P., or in the alternative, for an order granting summary judgment pursuant to Rule 56, Fed. R.Civ.P.

## FACTS

In February 1981 plaintiff began working at the HRA in the Office of Data Processing ["ODP"]. Within a short period of time plaintiff became involved in numerous altercations with his co-workers, who allegedly subjected him to "horrendous treatment."[1] Plaintiff was transferred to another work group, but he did not get along with the head of the department. Plaintiff was transferred to a third group, but there, too, his colleagues allegedly "hazed and threatened him" verbally and physically. After the last transfer, HRA required plaintiff to see a psychiatrist, who ultimately found him to be healthy. HRA also brought several lengthy disciplinary actions against him. Plaintiff alleges that HRA took these actions to induce him to resign.

Plaintiff further asserts that HRA officials improperly denied him paid leave for religious holidays and family emergencies. In October 1990 plaintiff, who apparently had used all his personal and vacation days for the year, requested advance annual leave credit for two Jewish holidays, Shemini Atzereth and Simchath Torah. The holidays are among those on a list, HRA Informational No. 82–35, which requires HRA approval for leave for religious observance. HRA allegedly refused plaintiff's request and instead required plaintiff to take unpaid leave to observe the two holidays. Plaintiff complained about the decision, but HRA did not change its position. HRA also indicated that it had deducted 50½ hours of religious leave that plaintiff had already been granted. HRA asserts that the hours had been deducted after it discovered that the time had been improperly advanced for holidays not listed on Informational No. 82–35. HRA asserts that plaintiff had compiled "an exceptionally poor time and attendance record over the years" and "carried a 'negative' leave balance, *i.e.*, had no leave accumulated and borrowed against future leave." The 50½ hours were charged as leave without pay.

In approximately December 1990 plaintiff was told that his mother was terminally ill with bone cancer. He requested an unspecified period of leave to visit his mother. Plaintiff did not have any leave time accrued, and HRA officials declined to advance him future annual leave time. Plaintiff appealed to his group's director, with whom plaintiff exchanged angry words. The director refused to advance annual leave. Plaintiff then appealed to the director's supervisor, who, on December 26, 1990, also rejected plaintiff's request.

On December 10, 1990 plaintiff's mother died and he arrived at the office three hours late because he had to arrange for her funeral. He requested that the three hours be advanced as paid annual leave,

---

**1.** Plaintiff does not allege on what date or in what year the friction with his HRA colleagues commenced. Nor does he describe the substance of the conflicts.

but on December 31, that request was denied by Helen Ferrante, his supervisor. Plaintiff tried to talk to another supervisor, Jean Jenkins, in an effort to appeal the decision, but Jenkins refused to meet with plaintiff. He then wrote a note to Jenkins in which he demanded another transfer. When Jenkins did not respond, plaintiff spoke to the Assistant Administrator of the office, Paul Roth, and stated that he refused to return to work under the command of Ferrante. Roth responded that unless plaintiff returned to work, he would declare him to be insubordinate and would suspend plaintiff. Plaintiff was adamant and, that afternoon, Roth suspended him from work. Two uniformed security guards escorted plaintiff from the building. The suspension has since been rescinded, but plaintiff has refused to return to work.

On November 1, 1990 plaintiff filed a religious discrimination claim with the EEOC. The EEOC took no action, but issued a letter granting plaintiff permission to litigate the matter. On February 25, 1991 plaintiff commenced the present case by filing an order to show cause why the City defendants should not be preliminarily enjoined to transfer him to a different department. This court denied plaintiff's application for injunctive relief. On April 11, 1991, the City defendants submitted the present motion. For the reasons stated below, the motion is granted.

## DISCUSSION

In considering a motion to dismiss under Rule 12(b)(6), the court must accept plaintiff's claims as true and accord them a liberal construction. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). The court must be mindful that complaints drafted by *pro se* litigants are to be construed liberally. *Id.* at 520, 92 S.Ct. at 595–96. It may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *accord Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## A. *Title VII*

Plaintiff alleges that the City defendants' actions violated Title VII, which makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion...." 42 U.S.C. § 2000e–2(a)(1). Construing plaintiff's allegations in a light most favorable to him, and construing his pro se complaint very liberally, plaintiff apparently contends that HRA violated Title VII in three ways. Plaintiff alleges that: (1) allowing him leave without pay to observe two Jewish holidays did not reasonably accommodate his religious practices; (2) HRA's decision to deduct the 50½ hours of paid leave constituted retaliation; and (3) the poor treatment he received by his co-workers at HRA constituted a "hostile environment."

■ 1. *Accommodation.* Under Title VII an employer is required to "accommodate" an employee's religious observance unless the accommodation would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The Supreme Court has held that section 2000e(j) prohibits an employer from refusing to make accommodations, which do not create undue hardship, for the religious practices of employees. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 2271–72, 53 L.Ed.2d 113 (1977). An employer need not accommodate an employee at all costs, *Ansonia Board of Education v. Philbrook,* 479 U.S. 60, 70, 107 S.Ct. 367, 372–73, 93 L.Ed.2d 305 (1986), nor does Title VII require employers to accommodate religious observance in a way that spares employees of all costs. *Pinsker v. Joint District Number 28J,* 735 F.2d 388, 390–91 (10th Cir.1984). An employer must make only those accommodations that are "reasonable." *Ansonia Board of Education,* 479 U.S. at 68, 107 S.Ct. at 371–72. The Supreme Court has held that allowing leave without pay for religious observance is generally a reasonable practice under Title VII. *Id.; accord Pinsker,* 735 F.2d at 391.

Under these principles, in the present case, HRA's policy of allowing plaintiff to take unpaid leave to observe Jewish holidays, without more, does not constitute a violation of Title VII. Plaintiff has not alleged that his position was jeopardized by virtue of his religious observance. Nor has he alleged that HRA applied its leave policy in a discriminatory fashion. Plaintiff has not shown a failure to accommodate his religious observance.

*2. Retaliation.* Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter. ..." The purpose of this section is to forbid an employer from retaliating against an employee who has opposed an unlawful employment practice. *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). The statute does not proscribe every personnel decision that has an adverse impact on an employee. *Grove v. Frostburg Nat. Bank,* 549 F.Supp. 922, 944 (D.Md.1982). Only those actions that are discriminatory may serve as the basis of a retaliation claim. *Id.* (retaliation claim dismissed where employer cancelled insurance coverage for prescription drugs for all employees).

In the present case plaintiff contends that HRA's deduction of the 50½ hours of paid leave constituted retaliation for his protests against HRA's refusal to advance him annual leave time for observance of Shemini Atzereth and Simchath Torah. Plaintiff's retaliation claim must fail, however, because there is no allegation that HRA treated him differently from other employees. In deducting the 50½ hours of paid leave, HRA was not applying a special leave policy against plaintiff in particular. HRA was applying the provisions of Informational No. 82–35, a list which governs the leave policy for all HRA workers. Although plaintiff may view HRA Informational 82–35 as unfair, there is no allega-

tion that the list is discriminatory or that it was applied in a discriminatory fashion.

*3. Hostile Environment.* It is well established that a working environment overrun by discriminatory antagonism, which has been termed a "hostile environment", constitutes a violation of Title VII, 42 U.S.C. § 2000e–2(a)(1). *Snell v. Suffolk County,* 782 F.2d 1094, 1102 (2d Cir.1986). As stated in *Snell,* "a discriminatory and offensive work environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers" may violate Title VII. *Id.* at 1102–1103 [citation omitted]. To establish a hostile atmosphere, plaintiff must demonstrate that the religious enmity was pervasive. *Id.* at 1103. Casual comments or sporadic conversation will not trigger equitable relief pursuant to the statute. *Id.*

In the present case plaintiff has not pleaded facts giving rise to a hostile work environment claim. Plaintiff's complaint details intense friction between his HRA co-workers and him. However, the friction of which plaintiff complains was not motivated by religious discrimination; plaintiff does not allege even a single hostile comment pertaining to his religious beliefs. Plaintiff alleges that the acrimony stems from personality conflicts. Undoubtedly, such friction creates an uncomfortable working atmosphere, but it does not support a claim cognizable under Title VII.

In sum, plaintiff has alleged no set facts upon which a violation of Title VII can be found and his conclusory claims of discrimination are not persuasive. Accordingly, plaintiff's Title VII claim must be dismissed. *See Martin v. New York State Department of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

**B.** *The First, Eighth and Fourteenth Amendments.*

The complaint alleges that defendants violated plaintiff's rights under the first amendment. The question presented is whether the economic impact of losing a day's wages in order to observe a religious holiday is a denial of freedom of religion.

*See Pinsker,* 735 F.2d at 391. In determining whether an employer's leave policy offends the first amendment, a court must decide whether the policy puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citing *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)). It is well settled that, without more, "[l]oss of a day's pay for time not worked does not constitute substantial pressure on [an employee] to modify his or her behavior" and is consistent with the first amendment. *Pinsker,* 735 F.2d at 391. Accordingly, plaintiff's first amendment claim is dismissed.

The complaint also alleges that jurisdiction is based, in part, on the eighth and fourteenth amendments to the Constitution. However, plaintiff has alleged no set of facts which can be construed to show a violation of the eighth amendment's prohibition of cruel and unusual punishment or the fourteenth amendment's guarantee of due process. Therefore, those claims are dismissed.

## C. *Sections 1981 and 1985.*

It is well established that 42 U.S.C. § 1981 is primarily grounded in racial discrimination and does not apply to actions alleging religious discrimination. *Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 2592–93, 49 L.Ed.2d 415 (1976). Because plaintiff in the present case has alleged only religious discrimination, his cause of action pursuant to § 1981 must be dismissed.

■ In order to state a claim under 42 U.S.C. § 1985, a plaintiff must show both a conspiracy to violate his or her constitutional rights and racial or other class-based discriminatory animus behind the conspirators' actions. *Greene v. Brown,* 535 F.Supp. 1096, 1099 (E.D.N.Y.1982). Plaintiff's complaint does not satisfy either prong of the requirement because it does not allege that any defendant conspired to take any kind of discriminatory action against him.

## D. *Rehabilitation Act of 1973 and 42 U.S.C. § 2000d–1.*

■ The Rehabilitation Act of 1973, 29 U.S.C. § 794(a), prohibits discrimination against qualified handicapped individuals in any program or activity receiving federal funding. Plaintiff stated that in 1981 he had "had documented mental health problems." However, there is no evidence that plaintiff has or had a physical or mental impairment which substantially impairs one of his "major life activities," or that he has been regarded as having such an impairment. *See* 29 U.S.C. § 706(8)(B). Furthermore, there is no allegation that HRA receives federal funding. Accordingly, plaintiff has not stated a claim under § 706.

The same is true with regard to plaintiff's claim pursuant to 42 U.S.C. § 2000d–1. That statute, together with 42 U.S.C. § 2000d, prohibits recipients of federal funding from engaging in discrimination pertaining to race and national origin. The statute is not applicable to the present case.

## E. *Section 1983.*

42 U.S.C. § 1983 establishes a federal cause of action for damages against state and local officials who have caused individuals to suffer a constitutional deprivation. *Duchesne v. Sugarman,* 566 F.2d 817, 829 (2d Cir.1977). The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

■ To state a claim under § 1983 plaintiff must, at minimum, allege a constitutional deprivation. *See Duchesne,* 566 F.2d at 829. In a case such as this one plaintiff must show intentional discrimination on the basis of religion. *See Johnson v. New York City Transit Authority,* 639 F.Supp. 887, 892 (E.D.N.Y.1986). Plain-

tiff's complaint fails to meet this minimum standard in that it is devoid of any specific allegation of discrimination. As discussed above, plaintiff does not allege that he was treated differently from other employees, with regard to HRA's annual leave or other policies. Accordingly, plaintiff's § 1983 claim is dismissed.[2]

In sum, the complaint fails to state a claim and is dismissed to the extent it involves the City defendants.

SO ORDERED.

2. In light of this conclusion, the court will not reach the issue of which, if any, of the City defendants may be sued pursuant to 42 U.S.C. § 1983.