**Lee Ray BANKS and Marcus L. Horton, Plaintiffs,**

v.

**SERVICE AMERICA CORP., Defendant.**

**Civil Action No. 96–2083–KHV.**

United States District Court, D. Kansas.

Nov. 21, 1996.

Timothy R. Brownlee, Crews, Waits, Brownlee & Berger, Kansas City, MO, for plaintiffs Lee Ray Banks, Marcus L. Horton.

Stanley D. Davis, Michael W. Atchison, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for defendant Service America Corp.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs, food service employees at a manufacturing plant in Kansas City, Kansas, expressed their sincerely held Christian religious beliefs by greeting customers with phrases such as "God bless you" and "Praise the Lord." They disregarded express instructions to cease these religious greetings and their employer, Service America Corporation, fired them. Plaintiffs responded with the instant lawsuit, alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. This matter comes before the Court on *Defendant Service America Corporation's Motion For Summary Judgment* (Doc. # 10) filed July 19, 1996.

For reasons set forth more fully below, the Court finds that said motion must be overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. at 2512.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment maybe granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 206(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. at 2512. Ever

mindful of these summary judgment standards, we now turn to the merits of defendant's motion.

### Undisputed Facts

D.Kan. Rule 56.1 provides in relevant part as follows:

The memorandum or brief in support of a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.

A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. *Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.* The statements required by this subsection shall be in addition to the material otherwise required by these rules and the Federal Rules of Civil Procedure.

Plaintiffs have not specifically controverted defendant's statement of undisputed facts in a manner sufficient under D.Kan. Rule 56.1. Accordingly, the Court deems all such facts to be admitted for purposes of this motion.

For purposes of this motion, the Court has disregarded all facts not set forth in compliance with D.Kan. Rule 56.1, and affords plaintiffs the benefit of all inferences favorable to their case. The undisputed facts are therefore as follows:

Pursuant to a contract with General Motors, Service America Corporation operates a cafeteria at the Fairfax automobile manufacturing plant in Kansas City, Kansas. Service America employees serve meals to GM employees in an operation similar to a fast food business.[1] Customers walk in, order their meals, receive prompt service, and pay for their meals. The Fairfax operation is a significant piece of business for Service America; consequently, it is important that Service America's customers—GM and its employees—be satisfied.

Service America hired Lee Ray Banks on March 12, 1994, and six weeks later, on April 26, 1994, it hired Marcus Horton. Before they were hired, neither Banks nor Horton informed Service America that they intended to say "God bless you," "Praise the Lord," or similar phrases to food service customers at the plant.

During the period of plaintiffs' employment, Service America had approximately 18 employees who served meals to approximately 3,000 GM employees each day. Initially, plaintiffs' duties as food service workers primarily included washing dishes, but they also served food to customers during mealtimes. Throughout the entire period of plaintiffs' employment, all Service America employees (including management) were required to serve food during mealtimes.

During the period of plaintiffs' employment, Service America and the United Auto Workers were parties to a collective bargaining agreement that governed the relationship between Service America and its employees. Pursuant to this agreement, employees with greater seniority were given preference over employees with less seniority in advancement to open jobs within Service America's food service operation. During his employment with Service America, Banks had less seniority than all but two Service America employees at the Fairfax Plant. Horton had less

---

1. According to the *Affidavit of Gayle Metzinger* (Doc. #16) filed September 4, 1996, the food service operation is set up in a number of stations, *e.g.* breakfast, entrees, grill, that are typically staffed with two or three (but sometimes only one) food server during peak times. Service America serves approximately 2,000 customers per day. All GM employees who are defendant's customers have 22–minute breaks in which to receive service and eat, and they go on break simultaneously. As a result, Service American must serve a rush of customers in a very short time.

seniority than all other Service America employees there.

Prior to plaintiffs' employment and continuing to the present, Service America's policy has been to train food service workers to greet customers in an appropriate and friendly fashion by saying things such as "Hello. What can I get for you today?". Plaintiffs frequently said "God bless you," "Praise the Lord," and/or other similar phrases to GM food service customers. At certain times, because they felt that the Holy Spirit moved them to bless *all* with whom they came into contact, plaintiffs extended such blessings to *all* of their food service customers. Service America deemed plaintiffs' greetings to be inappropriate and contrary to its policy.

A number of food service customers, including the employee who served as GM's liaison with Service America, complained to Service America about plaintiffs' religious speech.[2] On a number of occasions, Service America directed plaintiffs not to say "God bless you," "Praise the Lord" or other similar phrases to food service customers. On July 26, 1994, Banks received a formal warning to cease such comments. On August 25, 1994, Service America warned each plaintiff that he would be terminated if he refused to stop. Even after being warned, however, plaintiffs refused to comply. Therefore, that very day, Service America terminated plaintiffs' employment.

Plaintiffs are Christians who feel strongly that because of what God has done for them and the joy He has given them by changing their lives dramatically, they must say things that are positive, uplifting and inspirational to people with whom they speak,[3] and their religious greetings emanate from this belief. Plaintiffs intended to convey their greetings in a polite, pleasant and non-confrontational

manner, and the record contains no evidence that they did otherwise. Honoring God through their speech, through such greetings, was a deep seated sincerely held religious belief and plaintiffs could not stop the practice without violating their beliefs.

## Analysis

■ Service America claims that it could not have accommodated plaintiffs' practice of blessing customers absent undue hardship to the conduct of its business and that therefore, as a matter of law, it is entitled to summary judgment.

■ Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e–2(a)(1). "Religion" is defined to include only those "aspects of religious observance and practice" that an employer is able to "reasonably accommodate ... without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).[4] The intent and effect of this definition of "religion" is to make it a violation of Section 2000e–2(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practice of employees. *Pinsker v. Joint Dist. No. 28J of Adams and Arapahoe Counties,* 735 F.2d 388, 390 (10th Cir.1984), citing *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 2271, 53 L.Ed.2d 113 (1977).

■ Courts have implemented a two-step procedure for evaluating claims and allocating burdens of proof under these provisions. First, plaintiff has the burden of establishing a prima facie case. "A plaintiff ... makes out a prima facie case of religious

2. During the summer of 1994, 20 to 25 food service customers complained that plaintiffs' greetings were "inappropriate in the workplace." The General Motors liaison to Service America told plaintiffs' supervisor that he should "do something" about plaintiffs' conduct. *Affidavit of Steven M. Closser* (Doc. # 17) filed September 4, 1996.

3. Defendant argues that not everyone found plaintiffs' comments to be "positive, uplifting,

and inspirational." At most, however, the record suggests hearsay evidence that some persons regarded plaintiffs' comments as "inappropriate for the workplace."

4. As the Supreme Court has noted, "[t]he reasonable accommodation duty was incorporated into the statute, somewhat awkwardly, in the definition of religion." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 63 n. 1, 107 S.Ct. 367, 369 n. 1, 93 L.Ed.2d 305 (1986).

discrimination by proving: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Turpen v. Missouri–Kansas–Texas R. Co.*, 736 F.2d 1022, 1026 (5th Cir.1984); *see also Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1085 (6th Cir.1987), *cert. denied*, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988); *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 133 (3d Cir.), *cert. denied*, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); *Proctor v. Consolidated Freightways Corp.*, 795 F.2d 1472, 1475 (9th Cir.1986). Once a plaintiff has made out a prima facie case, "the burden shifts to the employer to show that it was unable reasonably to accommodate the plaintiff's religious needs without undue hardship." *Turpen*, 736 F.2d at 1026; *Pyro Min.*, 827 F.2d at 1085; *Protos*, 797 F.2d at 134; *Proctor*, 795 F.2d at 1475.

■ For purposes of this motion, Service America concedes that plaintiffs have established a prima facie case of religious discrimination. The burden therefore shifts to the employer to show reasonable accommodation, or that reasonable accommodation would be an undue hardship. *Pinsker*, 735 F.2d at 390; *Toledo v. Nobel–Sysco, Inc.*, 892 F.2d 1481, 1486 (10th Cir.1989), *cert. denied*, 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990). In this case, Service America did not attempt to accommodate plaintiffs' religious practice of blessing food service customers. Therefore the issue is whether defendant's refusal to accommodate plaintiffs' religious speech violated its obligation under § 701(j) to reasonably accommodate its employees' religious observance or practice without undue hardship on the conduct of its business. 42 U.S.C. § 2000e(j). "[T]he statutory burden to accommodate rests with the employer," *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 146 (5th Cir.1982), and the employee's "duty to make a good faith attempt to satisfy his needs through means offered by the employer" is irrelevant until the employer satisfies its initial obligation under the statute. *Id.; see also Anderson v. General Dynamics Convair Aerospace Division*, 589 F.2d 397, 401 (9th Cir.1978), *cert.*

*denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979) (burden rests on employer to undertake initial steps toward accommodation; employer cannot excuse failure to accommodate by pointing to deficiencies in employee's suggested accommodation).

■ The fact that an employer has not attempted to accommodate is not necessarily fatal to its position. In *Toledo, supra*, the Tenth Circuit held that an employer who has made no effort to accommodate the religious beliefs of an employee before taking action against him may nonetheless prevail if it shows that no accommodation could have been made without undue hardship; absent this showing, however, failure to attempt some reasonable accommodation violates the employer's duty to initiate accommodation of religious practices. In this regard the Tenth Circuit made the following comments:

> [I]t is certainly conceivable that particular jobs may be completely incompatible with particular religious practices. It would be unfair to require employers faced with such irreconcilable conflicts to attempt futilely to resolve them. Employers faced with such conflicts should be able to meet their burden by showing that no accommodation is possible.

> Although conceivable, such situations will also be rare. We therefore will be "skeptical of hypothetical hardships." [citation omitted] "The employer is on stronger ground when he has attempted various methods of accommodation and can point to hardships that actually resulted."

892 F.2d at 1489–1490.

Service America claims that it could not reasonably accommodate plaintiffs' religious greetings and that it therefore had a right to terminate their employment. It claims that plaintiffs' jobs were "completely incompatible" with their religious practices because plaintiffs were required to serve customers; plaintiffs' greetings contradicted Service America's legitimate preference for appropriate greetings; and plaintiffs refused to interact with customers in an appropriate man-

ner.[5] Service America claims that "the only possible accommodation" would have been to keep plaintiffs away from customers and that any such accommodation was untenable because it would have left Service America short-handed or required it to hire other employees to pick up the slack caused by plaintiffs' unwillingness to greet customers as Service America directed.[6] Service America also argues that any change in plaintiffs' job responsibilities would have violated defendant's collective bargaining agreement with the United Auto Workers. Defendant argues that it was not required to resort to such measures under *Lee v. ABF Freight System, Inc.*, 22 F.3d 1019 (10th Cir.1994), in which the Tenth Circuit explained the duty of "reasonable accommodation" as follows:

> An employer has the "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." To require an employer "to bear more than a de minimis cost in order to [accommodate an employee's religious beliefs] is an undue hardship." Reasonable accommodation does not mean that "an employer must deny the shift and job preference of some employees ... in order to accommodate or prefer the religious needs of others." Nor does Title VII require an employer to violate a valid labor agreement to accommodate an employee. Any cost in efficiency or wage expenditure that is more than de minimis constitutes undue hardship." The cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable due to a religious conflict can amount to undue hardship.

22 F.3d at 1023 [citations omitted].

The flaw in defendant's argument lies in its premise that as a matter of law, plaintiffs' jobs were "completely incompatible" with their practice of extending religious greetings to food service customers and that

allowing plaintiffs' to continue in their food service positions without abandoning their religious observances imposed an undue hardship on Service America. The record does not compel the conclusion that plaintiffs' greetings inflicted on Service America anything more than a *de minimis* burden, or that a refusal to prevent plaintiffs from extending such greetings was likely to cause undue future hardship to defendant. While an accommodation that requires an employer to bear more than a "de minimis" burden imposes undue hardship, *see Trans World Airlines*, 432 U.S. at 84, 97 S.Ct. at 2276, the law is clear that any proffered hardship must be actual: "[a]n employer ... cannot rely merely on speculation." *Pyro Min.*, 827 F.2d at 1086; *see also Tooley v. Martin–Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) ("A claim of undue hardship cannot be supported by merely conceivable or hypothetical hardships.... The magnitude as well as the fact of hardship must be determined by examination of the facts of each case."). Any hardship asserted must be "real" rather than "speculative." *Cook v. Chrysler Corp.*, 981 F.2d 336, 339 (8th Cir. 1992), *cert. denied*, 508 U.S. 973, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993). *See also Toledo*, 892 F.2d at 1492; *Pyro Min.*, 827 F.2d at 1086; *Brown v. General Motors Corp.*, 601 F.2d 956, 961 (8th Cir.1979); and *Burns v. Southern Pac. Transp. Co.*, 589 F.2d 403 (9th Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). Moreover, an employer "stands on weak ground when advancing hypothetical hardships in a factual vacuum." *Brown*, 601 F.2d at 960. "Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts." *Anderson*, 589 F.2d at 402; *see also Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). "Undue hardship requires more than proof of some fellow-worker's grumbling.... An employer ... would have to show ... actual imposition on co-

---

5. Service America argues that its customers "may well and likely do include Christians, Jews, Moslems, atheists, and others, many of whom prefer not to be subjected to plaintiffs' religious beliefs." This evidence is not properly before the Court, however, in compliance with D.Kan.R. 56.1.

6. This argument assumes that Service America could not without undue hardship allow plaintiffs to serve customers. Unless defendant removed plaintiffs from service, it had no "slack" to pick up.

workers or disruption of the work routine." *Burns,* 589 F.2d at 407; *Draper,* 527 F.2d at 520–21.

Affording plaintiffs the benefit of all favorable inferences in this case, defendant has not demonstrated as a matter of law that plaintiffs' blessings, or the grumblings of the recipients thereof, imposed undue hardship on Service America's operations or materially disrupted its work routine.

The Court acknowledges that plaintiffs' supervisor "took all customer complaints seriously" because "customer complaints could lead to a reduction of business if customers chose alternatives to the Service America Food Service Operation (such as bringing their own meal) or, ultimately, a loss of the contract with General Motors to provide food service." *Affidavit of Steven M. Closser* (Doc. # 17) filed September 4, 1996, at p. 4, ¶ 11. By the same token, General Motors employees are apparently a captive market because of their limited 22–minute break time, and the record is devoid of any evidence that Service America lost any business due to a resurgence of sack-lunch activity occasioned by plaintiffs' practices. Moreover, it is not even clear that a boycott by those who objected to plaintiffs' greetings would have had any material impact on the profitability or operation of defendant's business—either because they were few in number or because (since defendant operated various food stations) patrons could choose whether to encounter or to avoid an encounter with plaintiffs. On this record, the fear that customers would boycott Service America and bring sack lunches from home to avoid plaintiffs' religious speech—and that Service America would sustain a material loss on account of that activity—is more hypothetical than real. Likewise, the fact that plaintiffs' greetings might eventually impair the contractual relationship between Service America and General Motors is, while conceivable, speculative at best.

Finally, the fact that defendant received assorted complaints in the summer of 1994 does not, standing alone, demonstrate that plaintiffs' jobs were "completely incompatible" with their practice of extending religious greetings to food service customers. Given the volume of customers served (2,000 to 3,000 per day), plaintiffs' are entitled to the benefit of the favorable inference that 20 to 25 complaints over a three-month period presented no material problem for Service America.[7]

■ The Court recognizes that Title VII does not necessarily require an employer to allow an employee to impose his religious views on customers. For example, in *Wilson v. U.S. West Communications,* 58 F.3d 1337 (8th Cir.1995), the Eighth Circuit held that while an employer must reasonably accommodate an employee's religious views, "Title VII does not require an employer to allow an employee to impose his religious views on others." Likewise in *Johnson v. Halls Merchandising, Inc.,* 1989 WL 23201 (W.D.Mo. 1989), the United States District Court for the Western District of Missouri held that as a matter of law, an employer could not reasonably accommodate without undue hardship an employee's religious belief which required her to preface nearly every sentence she spoke with the phrase "In the name of Jesus Christ of Nazareth." By the same token, however, in *Brown v. Polk County, Iowa,* 61 F.3d 650 (8th Cir.1995), the Eighth Circuit held that where defendants showed no "actual imposition on co-workers or disruption of the work routine" on account of plaintiff's "occasional spontaneous prayers and isolated references to Christian belief," defendants failed to prove that accommodation would lead to undue hardship.[8]

---

7. The record is silent whether Service America operates a five, six, or seven-day week at General Motors. If it operates only five days a week, it served approximately 130,000 to 195,000 customers over the period it received 20 to 25 complaints. The percentage of complaints therefore lies somewhere between .01025 and .01923 per cent, considering all customer encounters.

8. In that case, plaintiff allowed prayers in his office during several department meetings, and during one meeting affirmed his Christianity and referred to Bible passages related to slothfulness and "work ethics." Such prayers were entirely voluntary and spontaneous, did not occur regularly, and dealt with matters related to business.

This record does not necessarily compel a finding, however, that plaintiffs were attempting to proselytize GM employees or impose their religious views on others. The fast food service encounter, as defendant has described it, is a fleeting and spontaneous one. Plaintiffs did not extend religious greetings to each customer each day. The record reveals no evidence of polarization between Christian customers and other customers, any legitimate fear that plaintiffs might favor those with similar religious beliefs in performing their jobs, or evidence that plaintiffs' religious practices adversely affected their job performances. An employer does not sustain its burden of proof merely by showing that accommodation would be bothersome or disruptive of operating routine. *Pyro Min., supra.* An employer's costs of accommodation "must mean present undue hardship, as distinguished from anticipated or multiplied hardship." *Cook,* 981 F.2d at 339; *Brown,* 601 F.2d at 962. Thus there must be "evidence of tangible present costs" of the accommodation, not speculative evidence of future impact. *Id.* The costs need not be ascertained with exactitude, but must be "present and real." *Id.; Vetter v. Farmland Industries, Inc.,* 884 F.Supp. 1287 (N.D.Ia.1995).

### CONCLUSION

Plaintiffs have demonstrated a triable issue of fact whether Service America, without *undue* hardship to its business operation and procedures, could reasonably accommodate their religious practice of greeting GM food service customers. Defendant has not shown that the evidence on this issue is so one-sided that Service America must prevail as a matter of law, or that a reasonable jury could not sustain plaintiffs' claim.

**IT IS THEREFORE ORDERED** that *Defendant Service America Corporation's Motion For Summary Judgment* (Doc. # 10) filed July 19, 1996, be and hereby is overruled.